**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

EFUA BENN,

Plaintiff,

v.

APPLEBEE'S GRILL & BAR, APPLE FOOD SERVICE OF NEW YORK LLC, NADIR UZZMAN AND TAHMEENA KHAN,

Defendants.

Case No.: 1:26-cv-5481 (MMG) (SN)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

RELEVANT RECORD ..... 2

ARGUMENT ..... 5

I. The Court must decide formation under the summary-judgment standard. ..... 5

II. The missing attribution evidence matters to each alleged assent event. ..... 7

III. Notice, consideration, and continued employment do not resolve a disputed act of acceptance. ..... 12

IV. The delegation clause cannot remove its own formation from the Court. ..... 15

V. Focused discovery and, if necessary, a formation trial are the proper alternatives to immediate compulsion. ..... 16

VI. Defendants' remaining arguments do not cure a failure to establish formation. ..... 18

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Cases**


*Ahmad v. Day*
No. 20-cv-4507 (AT) (GWG) (S.D.N.Y. Feb. 22, 2021) .............................................. 17

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)........................................................................................................ 6

*AT&T Technologies, Inc. v. Communications Workers of America*
475 U.S. 643 (1986)........................................................................................................ 1

*Baker v. Yahoo Inc.*
No. 25-cv-2797 (DLC), ECF 103 (S.D.N.Y. Aug. 26, 2026)............................... 6, 13, 18

*Barrows v. Brinker Restaurant Corp.*
36 F.4th 45 (2d Cir. 2022) ..................................................... 1, 2, 5, 6, 7, 11, 18

*Bensadoun v. Jobe-Riat*
316 F.3d 171 (2d Cir. 2003)......................................................................................... 2, 5

*Bynum v. Maplebear Inc.*
160 F. Supp. 3d 527 (E.D.N.Y. 2016) ............................................................................ 12

*Coinbase, Inc. v. Suski*
602 U.S. 143 (2024)...................................................................................................... 15

*Cordero Romero v. Goldman Sachs Bank USA*
No. 25-cv-2857 (GHW), ECF 140 (S.D.N.Y. Jan. 27, 2026)........................ 10, 11, 17, 18

*Doctor's Associates, Inc. v. Alemayehu*
934 F.3d 245 (2d Cir. 2019)............................................................................... 5, 14, 15

*Doyle v. UBS Financial Services, Inc.*
144 F.4th 122 (2d Cir. 2025) ......................................................................................... 19

*First Options of Chicago, Inc. v. Kaplan*
514 U.S. 938 (1995)................................................................................................ 1, 5, 15

*Garcia v. Roc Nation LLC*
No. 24-cv-7587 (GHW), 2026 WL 2279620 (S.D.N.Y. Aug. 7, 2026) ............................ 7

*Gold v. Deutsche Aktiengesellschaft*
365 F.3d 144 (2d Cir. 2004)........................................................................................... 12

*Granite Rock Co. v. International Brotherhood of Teamsters*
561 U.S. 287 (2010)........................................................................................ 2, 5, 16

*Gurary v. Winehouse*
190 F.3d 37 (2d Cir. 1999)........................................................................................ 16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*
586 U.S. 63 (2019)........................................................................................ 15

*Interocean Shipping Co. v. National Shipping & Trading Corp.*
462 F.2d 673 (2d Cir. 1972)........................................................................................ 2, 6

*Meyer v. Uber Technologies, Inc.*
868 F.3d 66 (2d Cir. 2017)........................................................................................ 13

*Miller v. Wolpoff & Abramson, L.L.P.*
321 F.3d 292 (2d Cir. 2003)........................................................................................ 16

*Morgan v. Sundance, Inc.*
596 U.S. 411 (2022)........................................................................................ 19

*Nicosia v. Amazon.com, Inc.*
834 F.3d 220 (2d Cir. 2016)........................................................................................ 2, 5, 6, 13

*Rent-A-Center, West, Inc. v. Jackson*
561 U.S. 63 (2010)........................................................................................ 15

*Sanchez v. NYC Medical Practice, P.C.*
241 A.D.3d 1215 (1st Dep't 2025) ........................................................................................ 12

*Schnabel v. Trilegiant Corp.*
697 F.3d 110 (2d Cir. 2012)........................................................................................ 14

*Segui v. Solar Mosaic, LLC*
No. 24-cv-968 (ER), ECF 121 (S.D.N.Y. June 15, 2026) ........................................................ 11

*Specht v. Netscape Communications Corp.*
306 F.3d 17 (2d Cir. 2002)........................................................................................ 13

*Sphere Drake Insurance Ltd. v. Clarendon National Insurance Co.*
263 F.3d 26 (2d Cir. 2001)........................................................................................ 2, 6

*Starke v. SquareTrade, Inc.*
913 F.3d 279 (2d Cir. 2019)........................................................................................ 13

*Shirazi v. LVNV Funding, LLC*
No. 25-cv-2992 (PAE), ECF 78 (S.D.N.Y. Aug. 26, 2026) .......................................... 6, 18

*Smith v. Spizzirri*
601 U.S. 472 (2024)................................................................................................. 19

*Zachman v. Hudson Valley Federal Credit Union*
49 F.4th 95 (2d Cir. 2022) ..................................................................... 9, 13, 18

**Statutes and Rules**

9 U.S.C. § 3.............................................................................................................. 20

9 U.S.C. § 4.................................................................................... 1, 2, 5, 16, 18, 20

15 U.S.C. § 7001......................................................................................................... 11

15 U.S.C. § 7006......................................................................................................... 11

N.Y. State Tech. Law § 302......................................................................................... 11

N.Y. State Tech. Law § 304......................................................................................... 11

Fed. R. Civ. P. 30......................................................................................................... 17

Fed. R. Civ. P. 56............................................................................... 5, 6, 10, 16, 20

Fed. R. Evid. 602 ................................................................................................... 5, 10

Fed. R. Evid. 803 ......................................................................................................... 10

Fed. R. Evid. 901 ....................................................................................................... 8, 9

Fed. R. Evid. 1001 .......................................................................................................... 9

**PRELIMINARY STATEMENT**

Defendants seek to remove Plaintiff Efua Benn's (hereinafter "Plaintiff" or "Benn") discrimination and retaliation claims from this Court on the strength of three electronic records bearing her name. The central question is whether those records reflect acts of assent attributable to Benn. Defendants' records custodian identifies documents in the employer's files and states that Benn executed them, but supplies no account-access history, credential-verification evidence, transaction audit trail, IP address, associated email address, or explanation of the signing process connecting the purported acceptance events to Benn herself. Graves Decl. ¶¶ 3, 6-9 & Exs. A-C, ECF Docket Entry ("ECF") 18.

Those records include a checked box and typed name timestamped 1:42 a.m. on January 3, 2024, a second electronic-signature box two days later using a different form of Plaintiff's name ("Efua Anasewa Benn"), and an UltiPro "Accepted" status dated January 11, 2024, that was later printed on July 7, 2026. Graves Decl. Exs. A–C. The question under 9 U.S.C. § 4 is not whether the files exist; it is whether Defendants have carried their burden to show that Benn herself formed an agreement to arbitrate. See *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986).

Plaintiff does not contend that an IP address or a particular vendor's audit certificate is an indispensable legal formality. Under *Barrows v. Brinker Restaurant Corp.*, 36 F.4th 45, 50-53 (2d Cir. 2022), an agreement appearing to bear an employee's electronic signature satisfies the movant's initial production burden. But an apparent electronic signature does not conclusively resolve a genuine dispute over who supplied it. Where competent testimony disputes execution, a court must evaluate that testimony and the electronic evidence under the summary-judgment standard; it cannot simply presume that the name appearing in an employer's database identifies

the person who performed the recorded act. See also *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (motion to compel is evaluated under a standard "similar to that applicable for a motion for summary judgment," drawing reasonable inferences for the nonmovant); *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Benn need only produce "some evidence" substantiating her denial. *Barrows*, 36 F.4th at 50 (quoting *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972)); *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001).

The appropriate relief is denial of immediate compulsion, with focused discovery concerning formation and, if a genuine factual dispute remains, a hearing under 9 U.S.C. § 4. At a minimum, the Court should defer decision to permit the narrowly identified discovery requested below. The delegation provision does not bypass this inquiry: Plaintiff specifically challenges whether she assented to that provision as well as to the arbitration obligation.

Neither the breadth of the proposed agreement, the existence of consideration, nor Defendants' invocation of arbitration establishes the antecedent fact of assent. See *Granite Rock*, 561 U.S. at 299 ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.").

**RELEVANT RECORD**

Benn brings discrimination and retaliation claims under Title VII, the New York State Human Rights Law, and the New York City Human Rights Law arising from her employment at the Broadway Applebee's restaurant. Compl., ECF 8. The complaint alleges that her employment began in November 2023.

Defendants' declaration describes Apple Food's acquisition of the restaurant and rehiring of existing staff in January 2024. Graves Decl. ¶¶ 4-5. The disputed legal question concerns the acts by which Defendants say Benn accepted arbitration during that subsequent January 2024 onboarding.

Defendants rely on Jessica A. Graves, Doherty's Risk Management Manager and a custodian of its restaurant business records. She identifies Doherty as Apple Food's affiliated corporate parent and describes its administrative support functions. Id. ¶¶ 1-3. She expressly bases her account on review of records rather than direct firsthand knowledge. Id. ¶ 3. Paragraphs 6-9 characterize the documents as an application, two executed arbitration agreements, and a subsequent reaffirmation. They do not describe credentials, email addresses, IP addresses, account ownership, delivery of the documents, security controls, or the mechanics of any particular acceptance event.

Exhibit A contains an arbitration provision under a conspicuous "MANDATORY ARBITRATION AGREEMENT" heading. Its first page displays a checked box, the typed name "Efua Benn," and a signature entry bearing that name and the timestamp "1/3/2024 1:42 AM." The remaining application sections display the same minute. A 1:42 a.m. completion time is not the ordinary footprint of restaurant-shift onboarding, and the identical minute across multiple application sections is consistent with a single batch event rather than separate, authenticated acts of review and assent. Those circumstantial features matter because Defendants offer no IP address, device identifier, credential log, or email address tying the 1:42 a.m. entries to Benn. Graves Decl. ¶¶ 6–9.

Exhibit B contains the same arbitration language and an electronic-signature box identifying "Efua Anasewa Benn," dated January 5, 2024. Graves Decl. Exs. A-B.

The record does not explain why the second instrument uses a different form of the name, what account produced that signature box, or how the January 5 event relates to the January 3 application entries two days earlier.

Exhibit C's acknowledgment page identifies "Efua Benn," employee number 155399, and Apple Food Service of New York LLC. It lists "Mandatory Arbitration Agreement 12.2019" and records an "Accepted" status dated January 11, 2024, at 4:09 PM. The acknowledgment is followed by English and Spanish versions of the arbitration policy. Its print-preview header bears a July 7, 2026 date and an UltiPro URL. Id. Ex. C. The record does not explain which authenticated user generated the January 11 acceptance status, refer to any email address or IP address, nor does it explain how the attached policy version was associated with that event. The proposed terms are broad. They address employment-related statutory claims, include affiliated companies and managers, incorporate the AAA's then-current Employment Arbitration Rules, and state that "[t]he arbitrator, and only the arbitrator, will decide any and all disputes regarding whether a claim is arbitrable." Id. Exs. A-C. Plaintiff's objection concerns whether she adopted those terms, including the quoted delegation language. A July 2026 printout of a January 2024 "Accepted" status is not a contemporaneous audit trail. It is a later-generated report from an HRIS URL. Without user, session, IP, or version metadata, the printout cannot identify who caused the status to change or what text the user was shown when the status flipped.

Defendants' counsel confirms that Plaintiff's counsel requested an audit trail showing when the documents were created, viewed, and signed, together with IP addresses or other identifying information, on August 30, 2026. Nehme Decl. ¶ 6, ECF 17. The motion nevertheless supplies the three exhibits and the custodian's account without that transaction-level evidence.

Counsel's earlier statement that he would consult his client to determine whether she agreed to arbitration is not an admission that she did. Id. ¶¶ 3-4. That request identified precisely the attribution data Defendants still have not produced. A records-custodian declaration founded on file review, unaccompanied by the transaction history Plaintiff requested, cannot convert labels in an employer database into conclusive proof of personal assent. See Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 602.

## ARGUMENT

### I. The Court must decide formation under the summary-judgment standard.

Section 4 of the FAA permits an order compelling arbitration only when the court is satisfied that the making of the arbitration agreement is not in issue. If formation is genuinely disputed, the statute requires a hearing of that issue. See 9 U.S.C. § 4. See also *Nicosia*, 834 F.3d at 229 ("If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.") (quoting *Bensadoun*, 316 F.3d at 175).

Federal policy favoring arbitration does not substitute for an agreement. *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 296, 299-301 (2010). Ordinary contract principles govern whether the parties formed one. See *First Options*, 514 U.S. at 944 ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."); *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) ("[P]arties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place."). *Barrows* supplies the controlling framework. A movant initially must demonstrate that an arbitration agreement was made; production of an agreement apparently bearing the opposing party's electronic signature satisfies that burden. See 36 F.4th at 50.

The nonmovant must then offer evidence substantiating the asserted absence of agreement. A denial in competent sworn testimony can itself create a genuine factual issue. Id. at 50-51. A court may not disregard that testimony merely because it is self-interested or because no separate witness corroborates it. Id. The same burden-shifting sequence has long governed Section 4 disputes in this Circuit. *Interocean Shipping*, 462 F.2d at 676; *Sphere Drake*, 263 F.3d at 30.

The summary-judgment standard requires consideration of all relevant admissible evidence and all reasonable inferences in Plaintiff's favor; it does not authorize a credibility determination favoring the records custodian. See *Baker v. Yahoo Inc.*, No. 25-cv-2797 (DLC), ECF 103, at 9-10 (S.D.N.Y. Aug. 26, 2026); *Shirazi v. LVNV Funding, LLC*, No. 25-cv-2992 (PAE), ECF 78, at 10-11 (S.D.N.Y. Aug. 26, 2026). The distinction is consequential: Plaintiff need not establish at this stage exactly who else entered a disputed signature if her competent evidence otherwise creates a genuine issue over whether she did so. See *Barrows*, 36 F.4th at 50-53.

*Barrows* is particularly instructive because it also involved a restaurant acquisition and a successor employer's electronic onboarding records. The employer supplied evidence of the signing platform, temporary and unique passwords, managers' denials of unauthorized signing, an employer-associated IP address, and the employee's presence at work that day. Even that record did not conclusively defeat the employee's sworn denial. See 36 F.4th at 47-48, 50-53. See also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986) (a dispute is genuine if a reasonable factfinder could return a verdict for the nonmovant); *Nicosia*, 834 F.3d at 229.

Rule 56 does not permit the Court to choose between competing inferences about who used the employer's system. That choice is for the factfinder if the denial is competent and the attribution record is incomplete.

If a restaurant successor's onboarding file, unique passwords, manager denials, an employer-associated IP address, and same-day time records were not enough to take the question from the factfinder in *Barrows*, Defendants cannot obtain that result on a thinner record that lacks even those connecting facts. 36 F.4th at 47–48, 50–53.

Here, Defendants supply materially less detail about the signing process, establishing why the mere accumulation of records bearing her name cannot substitute for resolving their disputed attribution.

Recent authority reinforces that the Court cannot reject competent testimony simply because it comes from the interested plaintiff. In *Garcia v. Roc Nation LLC*, No. 24-cv-7587 (GHW), 2026 WL 2279620, at *15 (S.D.N.Y. Aug. 7, 2026), the court applied *Barrows* in the summary-judgment context and declined to weigh the plaintiff's credibility merely because defendants characterized his testimony as self-serving and unsupported. *Garcia* concerned employment claims rather than arbitration formation, but its application of the same evidentiary principle confirms that credibility must ordinarily be resolved at trial.

**II. The missing attribution evidence matters to each alleged assent event.**

**A. The exhibits show names & recorded statuses; they do not explain who signed.**

Defendants have produced identifying labels: Benn's name, an expanded version of her name, and an employee number. The gap is not the absence of every identifier. It is the absence of evidence explaining how the system linked an actual user to the particular acts said to constitute agreement. Graves Decl. ¶¶ 6-9 & Exs. A-C. A profile's identifying information and a logged-in user's identity are related but distinct matters. The latter depends on such facts as how credentials were issued, who controlled them, what verification was required, and whether an administrator could enter, import, or alter an acknowledgment.

Critically, for each agreement, there is no accompanying email address nor IP address. Names and employee numbers identify a personnel file. They do not authenticate a particular click, check-box, or status change. See Fed. R. Evid. 901(a) (authentication requires "evidence sufficient to support a finding that the item is what the proponent claims it is"). The claim here is not merely that the printouts came from Defendants' system; it is that Benn performed the recorded acts.

For January 3, Defendants do not describe the application platform, the account-registration process, the owner of any associated email or telephone number, or the specific action that generated the checked box and signature entry.

Indeed, Exhibit A's repeated timestamp across three sections warrants an explanation of whether the system recorded separate acts or applied a single completion event to multiple forms. The point is that the printout does not answer how the event occurred nor who completed it. A single 1:42 a.m. stamp reused across sections is at least as consistent with an automated or administrative completion as with three considered acts of assent by a restaurant employee. Defendants offer no platform description that would allow the Court to reject that inference as a matter of law.

For January 5, the signature box is evidence of apparent execution, but the record does not identify the platform or account used, explain the second signing process, or connect the person using that process to Benn. Exhibit B should be examined independently. The unexplained shift from "Efua Benn" on January 3 to "Efua Anasewa Benn" on January 5 is another attribution fact Defendants leave unaddressed. If the same authenticated user completed both events, the system records should say so. They do not.

For January 11, Exhibit C is particularly dependent on an explanation of the system.

The acknowledgment states that an earlier arbitration agreement was signed and records acceptance of the listed policy. If Benn actually accepted that acknowledgment with adequate notice, it could independently establish or reaffirm an arbitration obligation even if an earlier event were disputed. But the employer's "Accepted" status cannot resolve an otherwise genuine dispute about the actor who caused that status to appear. Defendants should identify the user, the relevant event record (i.e., email address, IP address, or other identifying information), the meaning of the status, and the policy presented at that time. Graves Decl. ¶ 9 & Ex. C. Nor do the three entries necessarily constitute three independent confirmations of personal assent. Whether they arose from separate authenticated sessions, a common account, an imported record, or a repeated onboarding workflow is precisely what the missing evidence would clarify. Plaintiff does not assert that any particular mechanism occurred. She submits that counting three disputed entries cannot answer a supported challenge to the identity of the actor behind each one. Each event must be tested on its own evidence. The July 7, 2026 UltiPro print-preview header confirms that Exhibit C is a later extract, not the native January 11 event record. A later extract that lists an employee number and an "Accepted" flag still does not identify the actor. See *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102–05 (2d Cir. 2022) (compulsion was unwarranted where the movant failed to produce evidence of how the electronic terms were actually presented).

**B. Business-record authentication does not conclusively establish personal assent.**

Plaintiff does not contend that Ms. Graves is disqualified from submitting the agreements purportedly signed by her simply because she did not witness a signing. A qualified custodian can authenticate business records, and a readable output of electronically stored information can satisfy the original-writing requirement if it accurately reflects that information. See Fed. R. Evid. 901(a), 1001(d). The question remains what the authenticated record proves.

A genuine employer record can accurately reproduce a stored name and acceptance status while leaving unresolved a contested assertion about the person who generated them. See also Fed. R. Evid. 803(6). Authentication and hearsay exceptions answer whether the exhibit may be considered. They do not answer who adopted the recorded terms. A business record may accurately store a false or unauthorized attribution.

Graves' description of her duties and record review supports the provenance of the exhibits. Her conclusions that Plaintiff "executed" or "reaffirmed" an agreement, however, do not explain the system facts underlying that attribution. Graves Decl. ¶¶ 3, 7-9. The motion provides no account-access history, identified verification procedure, or explanation of administrative permissions. A declaration used to support a motion evaluated under Rule 56 "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); see Fed. R. Evid. 602. Graves may describe what the files contain. She may not, without system facts, convert file review into conclusive testimony that Benn was the person who "executed" each event.

These omissions are material when tested against competent testimony disputing the alleged acts. In *Cordero Romero v. Goldman Sachs Bank USA*, the Hon. Gregory H. Woods, U.S.D.J. illustrated this distinction. The court there accepted the authentication of electronic records and rejected a best-evidence objection, yet held that the records and the plaintiff's specific denial left a factual dispute requiring trial. See No. 25-cv-2857 (GHW), ECF 140, at 1, 18-19, 21-24 (S.D.N.Y. Jan. 27, 2026) ("In support of its argument that Mr. Cordero manifested assent to the DAA, Goldman relies on screenshots of webpages it asserts Mr. Cordero "would have seen" during his sign-up process and internal records that it argues reflect that he did accept the DAA"). Admissibility and conclusive proof of assent are different inquiries.

Plaintiff asks this Court to assess the actual evidentiary conflict, after appropriate discovery, rather than equate the existence of business records with an irrefutable contract. The same reasoning defeats reliance on a general practice of requiring arbitration forms as a condition of onboarding. Evidence that the process ordinarily calls for acceptance can support an inference that acceptance occurred. But where the employee specifically disputes completing that process, as is the case here, the Court must still examine the basis for attributing the recorded event to her. *Cordero Romero*'s distinction between the standard workflow and evidence of the particular user's interactions directly supports that inquiry. Id., ECF 140, at 8-9, 21-24.

**C. Electronic-signature law preserves the requirement of an attributable act of assent.**

New York's Electronic Signatures and Records Act gives an electronic signature the same validity and effect as a handwritten signature. See N.Y. State Tech. Law § 304(2). It defines an electronic signature by reference to a sound, symbol, or process executed or adopted by a person with intent to sign the record. Id. § 302(3). The federal definition likewise requires execution or adoption by a person with intent to sign. See 15 U.S.C. § 7006(5). These provisions validate electronic methods; they do not establish who used a method on a disputed occasion. See also 15 U.S.C. § 7001(a) (electronic signatures may not be denied legal effect solely because they are electronic). Validity of the method is not identity of the actor. Both statutes still require that a person execute or adopt the symbol or process with intent to sign. In *Barrows*, even an employer-associated IP address did not conclusively identify the plaintiff as the signer. See 36 F.4th at 52-53. Here, Defendants fail to provide even that information. Similarly, in *Segui v. Solar Mosaic, LLC*, the court denied compulsion where the evidence permitted a reasonable jury to find that someone else with access to the relevant email account applied the plaintiff's electronic signature. See No. 24-cv-968 (ER), ECF 121, at 8-11 (S.D.N.Y. June 15, 2026).

But yet again, here, Defendants failed to supply even an email address associated with the purported execution of the arbitration agreements at issue. That is the precise risk created by an onboarding system whose credentials, access history, and administrative permissions have not been produced.

*Sanchez v. NYC Medical Practice, P.C.* provides the complementary example. There, the defendant supported its *prima facie* showing with an electronic signature certificate and an audit log identifying access times and IP addresses, while the plaintiff failed to create a sufficient factual dispute. See 241 A.D.3d 1215, 1215 (1st Dept. 2025). The requested records should be evaluated for what they actually establish about Benn's alleged acts.

*Bynum v. Maplebear Inc.* further demonstrates the evidentiary value of the requested material. The employer identified HelloSign's security measures and its use of IP addresses and other identifying data to track receipt, viewing, and submission of the agreement. The audit data showed review on three separate dates before signing, and the plaintiff acknowledged receiving the contract at her personal email address and reading most of it. See 160 F. Supp. 3d 527, 536 (E.D.N.Y. 2016). The court compelled arbitration on that record. *Bynum* does not make an audit trail mandatory; it shows how evidence of the actual transmission and signing process can corroborate assent. Graves' declaration supplies no comparable account of the three events at issue here. The requested discovery seeks that connection, not a special rule disfavoring electronic contracts.

**III. Notice, consideration, and continued employment do not resolve disputed acceptance.**

Defendants rely on the ordinary rule that a signer is bound by a document even if she did not read it. See Defs.' Mem. 5-7, ECF 19; see also *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004).

That rule addresses the consequences of signing; it does not decide whether the alleged signer performed or authorized the act in the first place. Plaintiff's formation challenge must therefore be evaluated before invoking a duty to read. See also *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 28–30 (2d Cir. 2002) (an offeree is not bound by inconspicuous terms of which she was unaware, and reasonably conspicuous notice plus an unambiguous manifestation of assent are both required).

The printed arbitration headings are conspicuous. Plaintiff does not argue that the words on these pages are inherently hidden or that an electronic agreement requires a wet signature. If Defendants prove that Benn received the displayed terms and affirmatively accepted them, the objective manifestation of assent can be binding without proof that she read every word. See *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 74-80 (2d Cir. 2017). What the present record does not explain is the actual interface and process encountered by the person allegedly signing, including whether the January 11 acceptance was linked to the policy attached to Exhibit C. See also *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289, 292–96 (2d Cir. 2019) (inquiry notice depends on the design and content of the interface actually presented); *Nicosia*, 834 F.3d at 233, 236–38; *Zachman*, 49 F.4th at 102–05. Defendants have not produced that interface. Conspicuous headings on later printouts do not prove that the person who encountered the live screens was Benn, or that the January 11 status change displayed the attached 12.2019 policy.

*Baker* supplies a useful comparison. There, the court considered the actual sign-up and pop-up language, copies of the relevant terms, account records identifying acceptance events, and discovery including a deposition of Yahoo's witness. See ECF 103, at 5-6, 9, 13-20. The decision rested on the combination of conspicuous notice and objectively assenting conduct.

Its treatment of multiple versions of the terms also underscores why the January 11 acknowledgment must be linked to the policy actually presented then. Production of a policy and a later printout listing an acceptance status does not, without an explanation of that link, answer a supported dispute about what the user encountered and accepted.

The same distinction answers the consideration argument. Mutual promises to arbitrate and an offer or continuation of at-will employment may supply consideration. That does not establish that the offered terms were communicated and accepted. See *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 121-23, 126-27 (2d Cir. 2012) (addressing notice and assent to subsequently transmitted terms). Continued work can manifest assent where the employee has adequate notice that continued employment constitutes acceptance. It is not a substitute for evidence of that notice and objectively assenting conduct. Consideration and formation are related but distinct. Even when consideration exists as a legal matter, the court still decides whether the parties formed the bargain. *Alemayehu*, 934 F.3d at 251–53. Continued at-will employment can supply consideration for an arbitration promise; it cannot identify the person who clicked "Accepted" at 4:09 p.m. on January 11.

The acquisition and rehire described in Graves' declaration explain why additional paperwork may have been generated in January 2024. They do not independently prove that Benn adopted the arbitration terms.

Nor does the January 11 acknowledgment establish ratification merely by reciting that an earlier agreement was signed: its own attribution and notice must be evaluated. Plaintiff accordingly seeks discovery of the actual communications, workflow, and acceptance records rather than a ruling that employment could never constitute consideration or acceptance.

**IV. The delegation clause cannot remove its own formation from the Court.**

Plaintiff specifically challenges formation of the delegation agreement contained in Exhibits A, B, and C. The challenge is that Defendants have not conclusively established an act by Benn adopting the sentence assigning arbitrability to the arbitrator, just as they have not conclusively established adoption of the underlying arbitration promise in the face of a properly supported dispute. This is a challenge to the asserted source of the arbitrator's authority, not an objection merely to the merits, scope, or fairness of an otherwise accepted agreement. That is the specific challenge *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69–72 (2010), requires. A delegation clause is itself "an additional, antecedent agreement," and the court decides a challenge directed at that agreement. *Id.* at 70. Formation of the delegation sentence is not a dispute the clause can assign away. *Rent-A-Center* distinguishes challenges to validity from "whether any agreement between the parties was ever concluded." *Id.* at 70 n.2 (internal quotation marks omitted); see *Alemayehu*, 934 F.3d at 251.

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, on which Defendants rely, recognizes that the court determines whether a valid arbitration agreement exists before referring a dispute to an arbitrator. <u>See</u> 586 U.S. 63, 69 (2019). *Coinbase, Inc. v. Suski* likewise explains that both arbitration and delegation rest on consent, and that a specifically directed challenge does not cease to be judicial merely because its reasoning also applies to the larger agreement. <u>See</u> 602 U.S. 143, 148-52 (2024). *Coinbase* involved competing agreements; its consent principle does not depend on finding a competing contract here. See also *First Options*, 514 U.S. at 944–45 (courts decide whether the parties agreed to arbitrate, including whether they agreed to arbitrate arbitrability, unless that agreement is clear and the agreement itself was formed).

Accordingly, the delegation sentence and incorporation of AAA rules cannot supply the missing premise that Benn adopted them. If the Court determines that a valid delegation agreement was formed, the allocation of remaining arbitrability questions follows that agreement. Until then, the Court must decide formation, including any necessary discovery and hearing under § 4. See *Granite Rock*, 561 U.S. at 299-301.

**V. Focused discovery and, if necessary, a hearing are appropriate.**

Rule 56(d) permits the Court to defer consideration, deny a motion, or allow discovery when the nonmovant shows by affidavit or declaration specified reasons why essential facts cannot yet be presented. That procedure fits the summary-judgment framework governing a motion to compel arbitration. Plaintiff requests a short period of discovery confined to the three alleged acceptance events and the systems that purportedly recorded them, rather than merits discovery concerning discrimination or termination. See *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003); *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (the nonmovant must identify the facts sought, why they are needed, and how they will be obtained). Plaintiff has done so: the missing facts are the native event records, account identifiers, credentials, IP and device data, workflow, and administrative permissions for the three dated events, all of which are in Defendants' or their vendors' possession.

The requested discovery addresses an identified evidentiary gap, not a generalized hope of finding a defense. The events are specified by date and exhibit; the missing facts concern account control, the acts recorded, and the version of the terms presented. Those are matters within Defendants' or their service providers' records and system knowledge. Plaintiff's counsel requested the audit information before this opposition, as Defendants' own declaration acknowledges. See Nehme Decl. ¶ 6.

The request bears directly on whether any of the three records establishes an attributable act of acceptance, and can be resolved without opening discovery into the merits of Plaintiff's discrimination claims.

The discovery should encompass: (1) native or reasonably usable event records showing creation, presentation, viewing, signing, acknowledgment, and any subsequent alteration for each exhibit; (2) associated account identifiers, verified email or telephone information, credential issuance and reset history, session identifiers, IP addresses, available device information, and applicable time zones; (3) the contemporaneous workflow and document versions, including how each displayed signature or acceptance status was generated; and (4) permissions and actual administrative activity relevant to entering, importing, changing, or accepting documents in Benn's account.

Plaintiff also requests a limited deposition of a knowledgeable records or system witness, including a Rule 30(b)(6) witness if appropriate, addressing those topics.

This relief has direct support in the electronic-assent cases. Before deciding *Cordero Romero*, the court ordered production of evidence of the plaintiff's actual interactions with the online portal, including screen captures, metadata, or audit logs, because generalized descriptions of what he would have seen did not resolve what actually occurred. ECF 140, at 8-9. In *Ahmad v. Day*, the court permitted discovery concerning the metadata of the alleged electronic acceptance while staying other discovery. No. 20-cv-4507 (AT) (GWG), ECF 34, at 3 (S.D.N.Y. Feb. 22, 2021). These decisions support tailored discovery where the formation issue and evidentiary need are properly presented; neither creates a categorical right to forensic discovery whenever a party requests it.

The discovery history in *Baker* and *Shirazi* also supports a measured procedure: both courts evaluated formation on records developed through limited discovery, even though they ultimately compelled arbitration. *Baker*, ECF 103, at 9; *Shirazi*, ECF 78, at 1-2, 13-18. Plaintiff seeks the same opportunity to test the evidence bearing on formation. See also *Zachman*, 49 F.4th at 102–05 (vacating and remanding where the electronic-presentment record was too incomplete to decide formation). Plaintiff proposes thirty days for this discovery, followed by a short supplemental submission on formation on a schedule set by the Court. If Defendants first supply material attribution evidence with their reply, Plaintiff requests an opportunity, by leave of Court, to respond to that evidence and conduct any necessary focused examination before decision. The opportunity to test the evidence is especially significant if a supplemental declaration introduces a previously undescribed signing or security process. If a genuine factual dispute remains after that development, § 4 requires trial of the making of the agreement. *Barrows*, 36 F.4th at 49-53; *Cordero Romero*, ECF 140, at 21-24.

Plaintiff expressly demands a jury trial under 9 U.S.C. § 4 on any triable issue concerning formation of the asserted arbitration or delegation agreement. She requests that the Court resolve that threshold issue before directing arbitration of the underlying claims. Section 4 entitles the party alleged to be in default to a jury trial of the making of the agreement if that party demands one on or before the return day of the notice of application. 9 U.S.C. § 4; see *Barrows*, 36 F.4th at 49–50.

**VI. Defendants' remaining arguments do not cure a failure to establish formation.**

The breadth of the proposed terms and their express coverage of employment-discrimination and retaliation claims concern what an existing agreement would cover. Defs.' Mem. 7-9.

Likewise, the provisions covering affiliates and managers, together with Graves' descriptions of the corporate and employment relationships, concern who could invoke an agreement if formed. Graves Decl. ¶¶ 2, 10-11 & Exs. A-C. Neither proposition dispenses with proof that Benn agreed to arbitrate.

Defendants' discussion of waiver also assumes an agreement. Defs.' Mem. 9-10. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417-19 (2022), bars an arbitration-specific prejudice requirement, and *Doyle v. UBS Financial Services, Inc.*, 144 F.4th 122, 130-33 (2d Cir. 2025), applies the governing waiver framework after *Morgan*. Plaintiff does not ask the Court to find waiver merely because Defendants participated in the EEOC process or because counsel exchanged correspondence before this motion. A finding that Defendants timely asserted arbitration would not establish that Plaintiff previously accepted it. Waiver analysis presupposes an existing right. *Morgan* supplies the waiver framework once an agreement is shown; it does not create the agreement.

Finally, *Smith v. Spizzirri* requires a stay, rather than dismissal, when the court finds a dispute arbitrable and a party requests a stay. 601 U.S. 472, 475-78 (2024). It does not eliminate the antecedent formation inquiry. If the Court ultimately compels arbitration, Plaintiff requests the statutory stay and retention of this action.

Pending a formation determination, any temporary stay should expressly permit the limited discovery and proceedings needed to decide that issue.

**CONCLUSION**

Plaintiff respectfully requests that the Court deny immediate compulsion and either deny the motion without prejudice pending focused formation discovery or defer decision under Rule 56(d); permit the limited discovery and supplemental submissions described above; and, if a genuine issue remains, conduct a jury trial under 9 U.S.C. § 4 concerning formation of the asserted arbitration and delegation agreements. If the Court ultimately orders arbitration, it should stay this action under § 3 rather than dismiss it.

Dated: September 14, 2026
Jamaica, New York

Respectfully submitted,

**SAGE LEGAL LLC**

By: _/s/ Emanuel Kataev, Esq._
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Efua Benn*